WMP:TJS
F. #2012R01675

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N F O R M A T I O N |
| - against - | Cr. No. <u>16-232 (ILG)</u><br>(T. 18, U.S.C., §§ 981(a)(1)(C), 1349 and |
| IRA ALEXANDER MCCOWN, | 3551 <u>et</u> <u>seq</u>.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c)) |
| Defendant. | |

- - - - - - - - - - - - - -X

THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.  <u>The Defendant and His Companies</u>

1.  Lincoln Capital Mortgage, Inc., Lincoln Financial Services, LLC, and Lincoln Financial Group, LLC (collectively, the "Lincoln Companies") were New York State corporations controlled by the defendant IRA ALEXANDER MCCOWN.  MCCOWN, who served as the Lincoln Companies' registered agent and president, operated the Lincoln Companies out of locations in New York, New York, Brooklyn, New York and Miami, Florida.  The Lincoln Companies were purportedly in the business of providing financing for real estate development projects, including soliciting clients who sought such financing.

2.  Strategic Development Corporation ("SDC") was an Oklahoma State corporation.  SDC was purportedly in the business of providing financing for real estate

development projects and soliciting funds from investors to finance investments in commercial real estate and other real estate development projects.

3. The defendant IRA ALEXANDER MCCOWN was a "senior consultant" to SDC, with authority to enter into agreements on behalf of SDC. In that role and as president of the Lincoln Companies, MCCOWN solicited clients for SDC.

II. The Fraudulent Schemes

4. In or about and between May 2006 and March 2012, both dates being approximate and inclusive, the defendant IRA ALEXANDER MCCOWN and others (collectively, "the co-conspirators") executed a scheme to fraudulently acquire fees from prospective clients of SDC. The co-conspirators offered loans through SDC to developers who were looking to finance large-scale construction projects. The defendant and his co-conspirators told the developers and the developers' associates that: (i) SDC had funds available to provide financing for the developers' projects in exchange for a due diligence fee and a second fee (a "commitment fee"), payable in advance, of ten percent of the loan amount; (ii) the ten-percent commitment fee would be placed in an attorney escrow account until the loan closed; and (iii) the commitment fee would be refunded if SDC did not fund the project.

5. Contrary to the defendant's and his co-conspirators' representations to the developers and the developers' associates: (i) SDC did not have the funds necessary to provide financing for the developers' projects; (ii) the due diligence fees and the commitment fees were transferred almost immediately, prior to the loan closings, from the attorney escrow account to accounts controlled by the defendant and his co-conspirators; and (iii) despite the

lack of funding, the due diligence fees and the commitment fees were not refunded to the developers and the developers' associates when SDC did not fund the projects.

6. The defendant and his co-conspirators collected approximately $1.5 million in the form of due diligence and commitment fee payments from approximately 15 individuals and corporate entities and used those funds to, among other things: (i) pay for the personal living expenses of the defendant and his co-conspirators; and (ii) transfer money to other businesses owned or controlled by the co-conspirators.

## WIRE FRAUD CONSPIRACY

7. The allegations contained in paragraphs one through six are realleged and incorporated as if set forth fully in this paragraph.

8. In or about and between May 2006 and March 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant IRA ALEXANDER MCCOWN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud clients of SDC and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

4

## CRIMINAL FORFEITURE ALLEGATION

9. The United States hereby gives notice to the defendant that, upon his conviction of the charged offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense or a conspiracy to commit such offense.

10. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

5

seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK